# UNITED STATES COURT
# OF APPEALS FOR THE FIRST CIRCUIT

Kang Lu
*Plaintiff–Appellant*,

*v*.

GINA K. KWON, in her official capacity as Secretary of the Executive Office of Public Safety and Security ("EOPSS"),

ANDREA JOY CAMPBELL, in her official capacity as Attorney General of Massachusetts,

*Defendants–Appellees*.

No. 26–1986

APPELLANT'S OPENING BRIEF

Appeal from a final decision of the United States District Court for the District of Massachusetts, Civil Action No. 25-CV-13649-AK.

Kang Lu, *in propria persona.*
5753 Highway 85 North, #2442
Crestview, Florida, 32536
LibertyWithoutLicense@gmail.com
Phone: 413-300-2102

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . 3

Request for Oral Argument. . . . . . . . . . . . . . . . . . . . . 5

Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . 5

Issues Presented For Review. . . . . . . . . . . . . . . . . . . . 6

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . 7

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . .11

Argument

I. Error in Statutory Interpretation. . . . . . . . . . . .13

II. Error in Applying Means-End Scrutiny. . . . . . . . . .17

III. Error in Failing to Resolve Actual Controversy . . . .20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . .21

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . .22

Certificate of Service . . . . . . . . . . . . . . . . . . . . . .22

# TABLE OF AUTHORITIES

Cases: Page

*Aetna Life Insurance Co. v. Haworth*
300 U.S. 227 (1937) . . . . . . . . . . . . . .20

*Armour v. City of Indianapolis*
566 U.S. 673 (2012) . . . . . . . . . . . . . .18

*District of Columbia v. Heller*
554 U.S. 570 (2008) . . . . . . .7, 8, 12, 18, 19

*FCC v. Beach Communications, Inc.*
508 U.S. 307 (1993) . . . . . . . . . . . . . .18

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*
312 U.S. 270 (1941) . . . . . . . . . . . . . .20

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007) . . . . . . . . . . . . . .20

*Murdock v. Pennsylvania*
319 U.S. 105 (1943) . . . . . . . . . . . . . .18

*New York State Rifle & Pistol Association, Inc. v. Bruen*
597 U.S. 1 (2022) . . . . . . . . . . .12, 19, 20

*Pennhurst State School & Hospital v. Halderman*
465 U.S. 89 (1984). . . . . . . . . . . . . . . 9

*Steigleider v. McQuesten*
198 U.S. 141, 143 (1905). . . . . . . . . . . . 8

Constitutional Provisions:

U.S. Constitution
Second Amendment. . . . . . . . . 6, 9, 11–12, 19

Massachusetts Declaration of Rights
Article VI. . . . . . . . . . . . . . . . . . . 7

Statutes: Page


28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 2201. . . . . . . . . . 5–7, 10, 12, 20

G. L. c. 6, § 172N. . . . .6, 10, 11, 13–16, 18, 21

G. L. c. 6, § 172B.5. . . . . . . . . 6, 10, 12, 21

G. L. c. 6A, §§ 2, 18 . . . . . . . . . . . . . 8, 14

G. L. c. 12, §§ 6, 10, 27 . . . . . . . . . . . . . 9

G. L. c. 22C, § 3 . . . . . . . . . . . . . . . . .14

G. L. c. 30A, § 1 . . . . . . . . . . . . . . . . . 8

G. L. c. 140, § 121 . . . . . . . . . . . . . .13, 15

G. L. c. 140, § 122 . . . . . . . . . . . . . . . .14

G. L. c. 140, § 131 . . . . . . . . . . . . .7, 8, 14

G. L. c. 140, § 131F. . . . . . 6, 8, 10, 11–18, 21

G. L. c. 147, §§ 23-25. . . . . . . . . . . . . . .14

G. L. c. 147, §§ 29-29A . . . . . . . . . . . . . .13

G. L. c. 269, § 10. . . . . . . . . . . . . . . . . 8


Rules and Regulations:


803 C.M.R. § 2.01 . . . . . . . . . . 6, 10, 12, 21

Fed. R. App. P. 4(a)(1)(A). . . . . . . . . . . . . 5

Fed. R. App. P. 34(a)(1). . . . . . . . . . . . . . 5

## REQUEST FOR ORAL ARGUMENT

1. Pursuant to Fed. R. App. P. 34(a)(1), Plaintiff-Appellant ("Appellant") requests oral argument because this appeal presents interrelated questions concerning the State's statutory firearms licensing regime and whether the district court properly resolved the parties' dispute in this action under 28 U.S.C. § 2201. Appellant respectfully suggests that oral argument would assist the Court in navigating the statutory framework and considering the issues on appeal.

## JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal is from a final decision of the district court in an action over which the district court had subject-matter jurisdiction under 28 U.S.C. § 1331.

3. The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. The complaint alleged an actual controversy and sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

4. The district court entered final judgment on August 5, 2026, disposing of all claims and all parties. Plaintiff filed a timely notice of appeal on August 28, 2026, within the period prescribed by Fed. R. App. P. 4(a)(1)(A).

<u>ISSUES PRESENTED FOR REVIEW</u>

5. Whether the district court erred in holding that the "licensing authority" as defined in G. L. c. 6, § 172N "does not carry over to other sections of the Massachusetts General Laws, including Section 131F" [Dkt. 22 at 10].

6. Whether the district court erred by recasting Appellant's as-applied challenge to the licensing fee as a claim "that Section 131F violates the Equal Protection Clause because it imposes a $100 firearm licensing fee," [Dkt. 22 at 12], and then declaring that the fee "survives rational basis review" [Dkt. 22 at 13], without first determining whether the fee is an occupational or professional licensing requirement or imposed as a charge for the enjoyment of a right secured by the Constitution.

7. Whether the district court erred under 28 U.S.C. § 2201 by leaving the parties' actual controversy unresolved over whether conditioning Appellant's exercise of his right "to keep and bear Arms" for personal use on payment of a $100 fee, completion of a background check, and submission of fingerprints violates the Second Amendment, where the court limited its ruling to the State's statutory authority to issue recreational firearm licenses.

## STATEMENT OF THE CASE

Procedural History:

8. On December 3, 2025, the Appellant sought declaratory relief[1] under 28 U.S.C. § 2201, asking the district court to declare that the Massachusetts firearms license, which "shall entitle a holder thereof … to possess and carry firearms" (G. L. c. 140, § 131), constitutes an *entitlement* or "particular and exclusive privileges, distinct from those of the community" (Article VI of the Massachusetts Declaration of Rights), and is thus "distinct from the pre-existent right 'to keep and to bear Arms'" secured by the Second Amendment (*District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)) [Dkt. 1 ¶¶ 37–38].

9. On February 20, 2026, the defendants-appellees ("Appellees") filed a motion to dismiss [Dkt. 16].

10. On March 25, 2026, Appellant filed an opposition to Appellees' motion to dismiss [Dkt. 20].

11. On August 5, 2026, the district court issued a memorandum and order granting Appellees' motion to dismiss, disposing of all claims and all parties [Dkt. 22].

12. On August 28, 2026, Appellant timely filed a notice of appeal [Dkt. 24].

---

[1] Appellant voluntarily dismissed his concurrent claim for damages against Defendant Campbell, in her personal capacity, under 42 U.S.C. § 1983. [Dkt. 17].

Statement of Facts:

13. Appellant is one of the people[2] of New Hampshire who wishes to exercise his right "to keep and bear Arms" during his frequent travels into Massachusetts.

14. A case of actual controversy arose under the Constitution, when Appellant was charged and prosecuted for carrying a firearm without a license and other related offenses under G. L. c. 269, § 10[3].

15. Appellee Gina K. Kwon ("Appellee Kwon") is the Secretary of the Executive Office of Public Safety and Security ("the Secretary"). In her capacity as the head of an "agency" as defined by Mass. G. L. c. 30A, § 1(2), Appellee Kwon holds the ultimate administrative authority over the regulation and issuance of licenses to carry firearms, pursuant to G. L. c. 140, § 131(h). In this role, the Secretary serves as the "agency to implement or interpret the law enforced or administered by it," through the promulgation of regulations under G. L. c. 30A, § 1(5). This licensing authority, including, for the licensing of non-residents, is exercised through the Colonel of the State Police, or persons authorized by him, pursuant to G. L. c. 6A, §§ 2 and 18, and G. L. c. 140, § 131F.

---

[2] *District of Columbia v. Heller*, 554 U. S. 570, 580 (2008): "The term [people] unambiguously refers to all members of the political community, not an unspecified subset. As we said in *United States v. Verdugo-Urquidez*, 494 U. S. 259, 265 (1990): '…"the people" protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.'"

[3] Commonwealth v. Kang Lu, Hampden County Superior Court Docket No. 2179 CR 67.

16. Appellee Attorney General Andrea Joy Campbell exercises supervisory control over county district attorneys in the prosecution of crimes within the Commonwealth pursuant to G. L. c. 12, §§ 6, 10, and 27.

17. Following the acquittal or dismissal of all charges and the return of his seized property, including two pistols and other arms for personal use [Dkt. 1 ¶¶ 13–14], Appellant sought declaratory judgment in federal district court. He argued that "[t]he statutory scheme governing the licensing of firearms is, like any other requirements on a profession, structurally and operationally identical to other professional licenses issued by the State" [*id.* at 15, ¶ 43], and that Appellees intentionally misapplied and willfully misused "statutory licensing requirements on a profession for gunsmiths, security guards and other public safety and security professionals as a pretext, and under color of law, to deprive [him] of individual rights secured by the plain text of the Second Amendment" [*id.* ¶ 9].

18. Citing the relevant statutes, Appellant requested that the district court declare that the $100 fee "can only be justified as a requirement on a profession, not as a charge for the enjoyment of a right secured by the Constitution" [*id.* ¶ 26]; that only "applicants for licenses in specified occupations [may be required] to submit a full set of fingerprints" [*id.* ¶ 30]; and that the background check is only for "evaluating applicants for employment, volunteer opportunities, or professional licensing" [*id.* ¶ 28] — requirements that no law imposes as conditions for exercising his individual right "to keep and bear Arms" [*id.* ¶¶ 29–30].

The District Court's Decision:

19. On August 5, 2026, the district court granted Appellees' motion to dismiss and issued a memorandum and order disposing of all claims and all parties [Dkt. 22]. In its decision, the court concluded that the "licensing authority," as defined in Mass. G. L. c. 6, § 172N, "does not carry over to other sections of the Massachusetts General Laws, including Section 131F" [*id.* at 10].

20. Next, the district court misconstrued Appellant's argument as a generalized claim that the licensing fee imposed by "Section 131F discriminates based on wealth" and "that the Court should apply heightened scrutiny" [Dkt. 22 at 13]. The court did not address the nature of the fee or Appellant's distinct contention that the "licensing fee can only be justified as a requirement on a profession, not as a charge for the enjoyment of a right secured by the Constitution" [Dkt. 1 ¶ 26].

21. Although neither party raised the question of licensing recreational firearm use, the district court nonetheless framed and resolved the parties' dispute around that unraised question under 28 U.S.C. § 2201. First, the court found that Mass. G. L. c. 140, § 131F authorizes Appellee Kwon, the Secretary of EOPSS, "to issue firearm licenses to recreational users" [Dkt. 22 at 9]. Second, the court declared that "Section 172B.5 does not restrict Defendants' authority to issue recreational firearm licenses under Section 131F" [*id.* at 10]. Third, the court declared that "803 C.M.R. § 2.01 does not prohibit the agency from issuing background checks for recreational firearm users" [*id.* at 12].

<u>SUMMARY OF THE ARGUMENT</u>

22. **(I)** The district court erred by misconstruing G. L. c. 6, § 172N's phrase "For the purposes of this section" as confining its definition of "licensing authority" to that section, rather than defining the authorities subject to its mandate. Section 172N's definition reaches state authorities empowered to impose occupational fees or licensing requirements on a profession; it therefore covers the EOPSS, which promulgates the firearms licensing regulations administered by the colonel of the state police. The district court's contrary reading would leave § 172N's disclosure requirement with little practical reach and relieve licensing authorities across multiple fields of the duty to specify convictions that may disqualify applicants. That result would undermine the Legislature's mandate to protect the public. This Court should REVERSE and hold that § 172N's definition applies to G. L. c. 140, § 131F and encompasses the Secretary of the EOPSS.

23. **(II)** The district court erred by failing to determine the licensing fee's legal character before applying means-end scrutiny. Appellant did not assert an equal protection challenge to Section 131F's fee. He sought a determination as to whether the fee is an occupational or professional licensing requirement or a charge for the enjoyment of a right secured by the Second Amendment. Instead, the district court recast Appellant's claim as an equal protection challenge and declared that the fee "survives rational basis review" [Dkt. 22 at 13].

24. Although that deferential standard applies to ordinary social and economic regulation, *District of Columbia v. Heller*, 554 U.S. 570, 628 n.27 (2008), rejects that standard for laws burdening specific enumerated rights. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 26 (2022), rejects means-end scrutiny entirely as the framework for Second Amendment cases, requiring an inquiry grounded in the Second Amendment's text and historical tradition. The lower court thus erred by failing to evaluate Appellant's claim under the proper framework, and this Court should VACATE the ruling and REMAND for further proceedings.

25. **(III)** The district court erred by failing to resolve the actual controversy presented. The parties' actual controversy concerned whether the State's firearms licensing regime, including its background check, fingerprinting, and licensing fee requirements, violates the Second Amendment as applied to Appellant.

26. Appellees defended those requirements as presumptively constitutional; Appellant agreed that they were facially constitutional but argued that Appellees had wrongfully applied them. Neither party raised the recreational licensing question. Instead, the district court addressed only the recreational licensing issue, holding that Section 131F authorizes recreational licenses, Section 172B.5 does not restrict that authority, and 803 C.M.R. § 2.01 does not bar background checks for recreational firearm users. The district court thus erred by failing to resolve the controversy presented under 28 U.S.C. § 2201, and this Court should VACATE the ruling and REMAND for the district court to address that controversy.

## ARGUMENT

## (I) The District Court Erred By Misreading Mass. G. L. c. 6, § 172N.

27. The district court's error rests on a fundamental misinterpretation of G. L. c. 6, § 172N. The text, structure, and operation of the State's various licensing regimes support applying the term "licensing authority," as defined in § 172N, when that term appears in "other sections of the Massachusetts General Laws, including Section 131F" [Dkt. 22 at 10]. G. L. c. 6, § 172N provides:

> "State and political subdivision licensing authorities shall provide in the licensing requirements for a professional license a list of the specific criminal convictions that are directly related to the duties and responsibilities for the licensed occupation that may disqualify an applicant from eligibility for a license. For the purposes of this section, 'licensing authority' shall include an agency, examining board, credentialing board, or other office or commission with the authority to impose occupational fees or licensing requirements on a profession."

28. The "For the purposes of this section" clause specifies which "State and political subdivision licensing authorities shall provide … a list of the specific criminal convictions that … may disqualify an applicant from eligibility for a license." Section 172N then defines "licensing authority" as a state or political subdivision entity "with the authority to impose occupational fees or licensing requirements on a profession."

29. With respect to firearms licenses, G. L. c. 140, § 121 defines a "licensing authority" as the local police chief or, if no such chief or officer exists, as may be the case for nonresidents, the colonel of the state police or his designee. Both the local police chief and the colonel of the state police satisfy the qualifying elements

of a § 172N “licensing authority,” because each is an authority of the state or a political subdivision with the “authority to impose occupational fees or licensing requirements on a profession.”

30. The local police chief is authorized by G. L. c. 140, § 122 to impose occupational fees or licensing requirements on gunsmiths to carry on their business and on gun dealers “to sell, rent, lease … firearms.” The colonel of the state police is authorized by G. L. c. 147, §§ 23–25 to impose occupational fees or licensing requirements on public safety and security personnel engaged in the private detective business or the business of a watch, guard or patrol agency. Additionally, G. L. c. 147, §§ 29 and 29A authorize the colonel of the state police to regulate the manner in which licensees, employees, agents, and guards carry firearms or guns “in the performance of their duties.”

31. Thus, the EOPSS, acting through the colonel of the State Police, qualifies as a “licensing authority” under G. L. c. 6, § 172N on two independent grounds. First, it is an “office” with authority to “promulgate regulations to carry out the purposes of [the firearms licensing] section.” See G. L. c. 6A, § 2; G. L. c. 140, § 131(h). Second, the colonel may impose occupational fees or licensing requirements on detective businesses and watch, guard, or patrol agencies under G. L. c. 147, §§ 23–25, and is also authorized to issue temporary firearms licenses under G. L. c. 140, § 131F. The State Police is a department within the EOPSS, and the colonel is its executive and administrative head. See G. L. c. 6A, § 18; G. L. c. 22C, § 3.

32. The district court's declaration that the definition of "licensing authority" in G. L. c. 6, § 172N "does not carry over to other sections of the Massachusetts General Laws, including Section 131F" [Dkt. 22 at 10], turns a contextual qualifier of a definition into a substantive prohibition the Legislature never intended. This interpretation produces an absurd and untenable result. Section 172N does not itself specify any licensing authority subject to its disclosure requirement. If § 172N's definition of "licensing authority" does not carry over to other sections of the General Laws, including Section 131F, then the scope of the disclosure requirement would be undefined, leaving it with no practical effect.

33. The correct reading of the "For the purposes of this section" clause is that § 172N identifies the authorities subject to its mandate; the clause does not limit § 172N's scope to itself or exclude licensing authorities defined in other sections of the General Laws. Section 172N should not be construed to impose an unstated restriction that leaves the scope of its disclosure requirement undefined.

34. The consequences of the district court's error would extend far beyond the firearm licensing regime directly at issue. For example, that interpretation would not only relieve the EOPSS of its obligation to specify which criminal convictions may disqualify a person from carrying firearms but would also leave the Board of Medicine, the Department of Early Education and Care, and the State's bar-admission authorities with no duty under § 172N to specify which criminal convictions may disqualify applicants from licensure or bar admission [Dkt. 1 at

15]. As a result, persons with convictions relevant to firearms misuse, medical practice, child abuse, or the practice of law could be allowed to serve or practice without the conviction-specific standards and safeguards that § 172N is designed to ensure. Such an interpretation could therefore invite a public health and safety crisis by disregarding the Legislature's mandate to protect the public from dangerous or unqualified practitioners.

35. In sum, the text, structure, and operation of the statutory regime require that the definition of "licensing authority" in G. L. c. 6, § 172N "carry over to other sections of the Massachusetts General Laws, including Section 131F" [Dkt. 22 at 10]. By holding otherwise, the district court creates an unwarranted distinction between related licensing statutes, improperly divests the Secretary of her licensing duties and authority, and invites an absurd and dangerous result across multiple licensing regimes that undermines the public safety protections the Legislature clearly seeks to secure.

36. Therefore, this Court should REVERSE the lower court's ruling and hold that the definition of "licensing authority" in G. L. c. 6, § 172N applies to G. L. c. 140, § 131F and thus encompasses the Secretary of the EOPSS.

## (II) District Court Erred by Applying Means-End Scrutiny.

37. Appellant did not argue "that Section 131F violates the Equal Protection Clause because it imposes a $100 firearm licensing fee." [Dkt. 22 at 12]. Rather, he asserted that "the licensing fee can only be justified as a requirement on a profession, not as a charge for the enjoyment of a right secured by the Constitution." [Dkt. 1 ¶ 26]. The district court recast his claim as an equal protection challenge based on the $100 fee's potentially discriminatory impact on applicants who are unable to pay. [Dkt. 22 at 12–13]. That mischaracterization altered the question before the court: rather than determining the legal nature and basis of the fee, the court applied means-end scrutiny and concluded that Section 131F "survives rational basis review." [Dkt. 22 at 13].

38. Thus, the district court failed to resolve the threshold question of whether the fee is an occupational or professional licensing requirement or a charge for the enjoyment of Appellant's right "to keep and bear Arms" for personal use [Dkt. 1 ¶ 23; Dkt. 20 ¶ 19]. Without answering that question, the court could not properly dispose of Appellant's claim by applying means-end scrutiny and declaring that the licensing fee "survives rational basis review" [Dkt. 22 at 13]. Appellant did not challenge the fee's facial constitutionality [Dkt. 1 ¶ 23]; he sought a determination as to whether Appellees may condition the exercise of his fundamental right "to keep and bear Arms" on payment of that licensing fee.

39. The Supreme Court has made clear that the government may not convert the exercise of a constitutional right into a privilege subject to a licensing charge: "A state may not impose a charge for the enjoyment of a right granted by the Federal Constitution," because a person cannot be compelled "to purchase, through a license fee or a license tax, the privilege freely granted by the constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 113–14 (1943). Although *Murdock* addressed First Amendment rights, its reasoning underscores why the legal character of Section 131F's fee matters: the fee may be an occupational licensing requirement, see G. L. c. 6, § 172N, or it may be a charge imposed on the exercise of a constitutional right. The district court erred by failing to resolve that distinction before declaring that the licensing fee "survives rational basis review."

40. Rational basis review generally applies to classifications in "areas of social and economic policy." A statutory classification that "neither proceeds along suspect lines nor infringes fundamental constitutional rights" must be upheld against an equal protection challenge if "any reasonably conceivable state of facts could provide a rational basis" for it. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). This review is highly deferential: for "ordinary commercial transactions," it "requires deference to reasonable underlying legislative judgments." *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012).

41. But in *District of Columbia v. Heller*, the Supreme Court expressly rejected rational basis review as the test for determining the permissible scope of regulation

of an enumerated right: "Obviously, the same test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms." 554 U.S. 570, 628 n.27 (2008). Thus, the district court erred by failing to determine whether the fee burdened Appellant's right "to keep and bear Arms" under the Second Amendment before applying rational basis review.

42. That principle was reaffirmed in *Bruen*, which rejected means-end scrutiny as the framework for evaluating Second Amendment cases. The Court explained, "[w]hile judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not deference that the Constitution demands here." *Bruen*, 597 U.S. at 26. The Second Amendment "is the very product of an interest balancing by the people," and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense (quoting *Heller*, 554 U.S. at 635). The district court thus erred by finding that the fee "survives rational basis review" before addressing its nature or application to Appellant's asserted Second Amendment conduct. [Dkt. 20, ¶ 13].

43. Therefore, this Court should VACATE the ruling and REMAND for consideration of Appellant's claim under the proper legal framework.

<u>(III) The District Court Erred in Failing to Resolve the Actual Controversy.</u>

44. The district court failed to resolve the parties' actual controversy. The Declaratory Judgment Act authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" in a case of actual controversy. 28 U.S.C. § 2201(a). That requirement is satisfied when "the facts alleged … show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). A declaration must resolve the parties' concrete dispute "through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).

45. Appellant sought a determination as to whether the State's firearms licensing regime, including its $100 fee, background check, and fingerprinting requirements, applies to his individual conduct, which is "presumptively" protected by the Constitution. *Bruen*, 597 U.S. at 17. Appellees defended those requirements as "presumptively constitutional." [Dkt. 16 at 2, 12–13]. Appellant agreed that the requirements were facially constitutional but argued that Appellees had wrongfully applied otherwise valid and constitutional "licensing requirements on a profession" to his fundamental right "to keep and bear Arms" [Dkt. 1 ¶¶ 9, 18]. Thus, the actual

controversy concerned Appellees' application of the licensing requirements, not whether the State could license recreational firearm use.

46. Yet, by referring to "recreational" firearm use fifteen times, the district court displaced the controversy the parties actually presented and decided three questions unrelated to that controversy, mischaracterizing both parties' positions: It found that G. L. c. 140, § 131F authorizes Secretary Kwon "to issue firearm licenses to recreational users" [Dkt. 22 at 9]; declared that "Section 172B.5 does not restrict Defendants' authority to issue recreational firearm licenses under Section 131F" [*id.* at 10]; and declared that "803 C.M.R. § 2.01 does not prohibit the agency from issuing background checks for recreational firearm users" [*id.* at 12]. These declarations did not resolve the parties' actual controversy.

47. Accordingly, this Court should VACATE the ruling and REMAND for the district court to resolve the dispute the parties presented.

## CONCLUSION

48. This Court should **(1)** reverse the district court's ruling that the definition of "licensing authority" in Mass. G. L. c. 6, § 172N "does not carry over to other sections of the Massachusetts General Laws, including Section 131F"; **(2)** vacate its ruling that the licensing fee "survives rational basis review"; **(3)** vacate its declaration that the Secretary may issue licenses for recreational firearm use; and **(4)** remand for further proceedings consistent with this Court's opinion.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3866 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Dated: November 13, 2026.

Respectfully,

/s/ Kang Lu

Kang Lu, *in propria persona.*
5753 Highway 85 North, #2442
Crestview, Florida, 32536
LibertyWithoutLicense@gmail.com
Phone: 413-300-2102.

## CERTIFICATE OF SERVICE

I certify that on November 13, 2026, I filed the foregoing Appellant's Opening Brief with the United States Court of Appeals for the First Circuit using CM/ECF. Assistant Attorney General Alexander Weiss, counsel of record and a registered CM/ECF user, will be served electronically through the system.

Dated: November 13, 2026.

/s/ Kang Lu

Kang Lu, *in propria persona.*